**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 5 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JIMMY LEE SHARBUTT,

      Defendant-Appellant.

No. 03-5169
(N.D. Okla.)
(D.Ct. No. 02-CR-78-P)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, and **PORFILIO** and **BRORBY**, Senior
Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is

therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Appellant Jimmy Lee Sharbutt, a federal prisoner represented by counsel, appeals his conviction and sentence for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm Mr. Sharbutt's conviction and sentence.

## I. Background

On December 21, 2001, police obtained and executed a search warrant for Mr. Sharbutt's residence located in Miami, Oklahoma. During the search, officers seized a 9mm semiautomatic handgun with a shoulder holster, drug paraphernalia, drug scales, marijuana, methamphetamine, and other items.

A two-count superceding indictment charged Mr. Sharbutt with one count of being a felon in possession of a firearm, and one count of possession of a controlled substance with intent to distribute. Mr. Sharbutt filed a motion to sever the two counts, a motion to suppress the evidence obtained with the search warrant, and a motion to exclude evidence of his prior possession of weapons or involvement in drug transactions pursuant to Federal Rule of Evidence 404(b). The district court held a suppression hearing, after which it denied the motions to suppress and to preclude all evidence related to his prior acts, except for one witness, and granted the motion to sever. During the felon in possession trial, the

district court also denied Mr. Sharbutt's motion to introduce a BB gun as demonstrative evidence. Thereafter, a jury found Mr. Sharbutt guilty of being a felon in possession of a firearm. After applying an enhancement under United States Sentencing Guideline (U.S.S.G.) §4B1.4(4) for possessing the firearm in connection with drug distribution, the district court sentenced him to 262 months imprisonment and five years supervised release.

## II. Issues on Appeal

On appeal, Mr. Sharbutt contends the district court erred by denying his: 1) motion to suppress evidence obtained from the search warrant because the affidavit supporting it a) contained insufficient information to establish probable cause, and b) omitted material facts affecting the decision to authorize it; 2) motion to preclude evidence of his prior possession of firearms, and sale and use of drugs because of the undue prejudice created; 3) motion to preclude testimony of a prosecution witness for lack of notice; and 4) motion to introduce a BB gun as demonstrative evidence because counsel did not know the BB gun was almost identical to the firearm found in his house until the day before the motion was made.

In response, the government contends the district court appropriately denied

these motions, and seeks affirmance of Mr. Sharbutt's conviction. Thereafter, Mr. Sharbutt filed a supplemental brief, raising a sentencing issue which challenges the constitutionality of the enhancement of his sentence based on the district court's finding he used or possessed the firearm in connection with a controlled substance offense or a crime of violence. In so doing, he relies on the Supreme Court's decision in *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531 (U.S. June 24, 2004), claiming the enhancement must be found beyond a reasonable doubt by a jury. The government opposes his request for remand of his sentence, based on its contention *Blakely* does not invalidate the United States Sentencing Guidelines.

## III. Discussion

### A. Affidavit Supporting Search Warrant

Detective Danny Green executed a three-page affidavit supporting the search warrant at issue in this case, in which he recounted his experience and training in narcotics investigations, and relayed recent information about Mr. Sharbutt obtained from Dana Witcraft during her December 2001 arrest on a felony warrant. After Ms. Witcraft gave officers permission to search her residence, they discovered several baggies containing methamphetamine. Ms. Witcraft stated she bought methamphetamine from Mr. Sharbutt at his house in

the Eastgate addition of Miami, Oklahoma, every week since August 2001. When purchasing the drug, she told Mr. Sharbutt what she wanted, which was usually an "eight-ball" (1/8 ounce) of methamphetamine, and he sometimes weighed the drug in front of her. She also stated she saw several ounces of methamphetamine in his house on different occasions, and last purchased methamphetamine from him at his house two days earlier, on December 19, 2001.

In the affidavit, Detective Green further explained that, based on his training and experience in narcotics investigations, traffickers of illegal substances often accumulate large amounts of cash and valuables kept in safes; keep drug paraphernalia to weigh and package drugs for distribution; maintain documentation on drug sales; and utilize firearms and other dangerous weapons for the purpose of securing and guarding their cash and drugs. Detective Green concluded his affidavit by stating that based on his investigation and experience, it was his opinion that these items were presently being concealed at Mr. Sharbutt's residence for criminal purposes. In addition to Ms. Witcraft's description of Mr. Sharbutt's home being in the Eastgate addition of Miami, Detective Green provided Mr. Sharbutt's street address, together with a description of the exterior of his house. Based on the foregoing information, the magistrate judge issued the search warrant, leading to the arrest of Mr. Sharbutt

and discovery of incriminating evidence in his home.

In response to Mr. Sharbutt's motion to suppress the evidence, the district court later held a suppression hearing at which Detective Green testified, explaining he possessed personal knowledge of Mr. Sharbutt's specific street address and description of the exterior of the house. He also recounted his own knowledge of Mr. Sharbutt's activities dealing in methamphetamine, and testified he believed Ms. Witcraft's story, based on information he received in other investigations into Mr. Sharbutt's methamphetamine dealings and the fact Ms. Witcraft possessed methamphetamine at the time of her arrest, which corroborated her statement she purchased an "eight-ball" from him two days before. He noted no one could consume an entire "eight-ball" of methamphetamine in two days, so the fact she possessed methamphetamine corroborated her story. He admitted he did not put certain information in his affidavit, including the fact Ms. Witcraft had no history of providing reliable information, had been convicted of a drug offense for which she was on probation, and possessed other items besides baggies of methamphetamine at her residence, including firearms, drug paraphernalia, and marijuana.

In denying the motion to suppress, the district court found: 1) the affidavit

alleged sufficient facts to establish probable cause; 2) a sufficient amount of Ms. Witcraft's information was corroborated by extrinsic information to establish her credibility; 3) the omission of additional information about Ms. Witcraft by Detective Green did not stem from "reckless disregard for the truth," "deliberate falsehood" or a "material omission"; and 4) the omitted information would not have altered the magistrate judge's decision to authorize the search, noting the affidavit made it sufficiently clear she was not a "model citizen."

On appeal, Mr. Sharbutt renews his assertion the information supporting the search warrant was unreliable because it was insufficiently corroborated and came from an informant with no previous history of reliability, who violated her probation by using drugs, and was in possession of controlled substances and firearms at the time of her arrest. Because Detective Green took no measures to verify the location of his residence or the veracity of her statements, Mr. Sharbutt claims her assertion of first-hand knowledge establishes no substantial basis for probable cause contraband existed at his residence.

In addition, Mr. Sharbutt maintains material omissions in the affidavit pertaining to Ms. Witcraft's felony probation for drugs, use of drugs, and discovery of drugs and firearms in her home would have affected the magistrate

judge's finding of probable cause for issuance of the warrant. He suggests this additional information would have made this informant's reliability "greatly suspect," leading the magistrate judge not to issue a search warrant.

In addressing Mr. Sharbutt's contentions, we first consider our standard of review:

> When reviewing a district court's denial of a motion to suppress, this court accepts the district court's factual findings unless they are clearly erroneous, viewing the evidence in the light most favorable to the government. However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law and is reviewed de novo under the totality of the circumstances.

*United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001), *cert. denied*, 535 U.S. 945 (2002). Unquestionably, probable cause is necessary for issuance of a search warrant, and must be supported by an oath or affirmation. *See United States v. Mathis*, 357 F.3d 1200, 1203 (10th Cir. 2004). "[A] valid probable cause determination requires only a substantial basis to find that evidence of a crime was probably present in the place to be searched." *Id.* at 1205. "[H]earsay evidence may form the basis for a probable cause determination," and therefore:

> [i]n testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct observation, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.

*Id.* at 1204. While we consider an "informant's veracity, reliability, and basis of

-8-

knowledge as relevant factors to evaluate," we also consider "a law enforcement agent's opinion, based upon his professional expertise, that evidence of illegal activity will be found in the place to be searched." *Id.* at 1205 (quotation marks and citations omitted). Finally, we generally "give considerable deference to a magistrate's determination of probable cause; a reviewing court's only duty is to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 1205 (quotation marks and citation omitted).

In applying our standard of review and the applicable rules in evaluating probable cause for issuance of a search warrant, we conclude the district court committed no error. In this case, the affidavit in question plainly stated Ms. Witcraft was arrested on a felony warrant; frequently purchased methamphetamine from Mr. Sharbutt at his Eastgate residence; saw several ounces of methamphetamine at that residence on different occasions; sometimes saw him weigh the methamphetamine on a scale; purchased an "eight-ball" from him only two days before; and possessed methamphetamine in her home at the time of her arrest. Detective Green also clearly outlined his extensive training and experience in narcotics investigation, and his professional opinion on what evidence of illegal activity would be found at Mr. Sharbutt's residence. Under the totality of the circumstances, we agree with the district court a substantial

basis existed for the magistrate judge to conclude the affidavit alleged sufficient facts to establish probable cause of illegal activity evidence at Mr. Sharbutt's home.

Moreover, at the suppression hearing, Detective Green further explained he possessed knowledge of other investigations concerning Mr. Sharbutt's drug dealings and his street address, which corroborated the information Ms. Witcraft gave him concerning his drug dealings and address. Detective Green also explained the fact Ms. Witcraft still possessed methamphetamine at the time of her arrest corroborated her statement she purchased an "eight-ball" from Mr. Sharbutt only two days before. Based on this information, we also agree with the district court's determination a sufficient amount of Ms. Witcraft's information was reasonably corroborated by other matters within Detective Green's knowledge, for the purpose of denying Mr. Sharbutt's motion to suppress. *See id.* at 1204-05.

We next address the issue concerning the omission of additional information about Ms. Witcraft by Detective Green in the affidavit. The opponent of a search warrant bears the burden of showing by a preponderance of the evidence at the suppression hearing that the affidavit intentionally or recklessly

omitted material information which, if included, would not support a finding of probable cause, and thereby would alter the magistrate judge's decision to authorize the search. *See United States v. McKissick*, 204 F.3d 1282, 1297 (10th Cir. 2000).

In this case, nothing in the record indicates Detective Green's omission of the additional information at issue was either intentional, reckless or material. Rather, from the information contained in the affidavit, the magistrate judge was patently aware of both Ms. Witcraft's criminal background and her drug use, as evidenced by the felony warrant for her arrest and her purchase, use and possession of methamphetamine. Knowing she was already a felon and frequent drug user, it is unlikely the magistrate judge would have found her possession of marijuana and other drug paraphernalia, or the violation of her probation for drug use, material to any reliability determination already made. Likewise, her possession of firearms is also unlikely to materially change such a determination. In any event, as previously discussed, the evidence corroborating her statements sufficiently bolstered the veracity of her statements, so the omission of additional information about Ms. Witcraft by Detective Green was not material to a determination on Mr. Sharbutt's motion to suppress the evidence.

-11-

B.  Prior Unlawful Acts and Motion to Preclude Rule 404(b) Evidence

The next issue we address is Mr. Sharbutt's motion to preclude evidence of his prior involvement with drugs and possession of a firearm.  In denying the motion, the district court found the evidence the government sought to introduce at trial relevant under Federal Rule of Evidence 404(b) for the purpose of establishing Mr. Sharbutt's motive in possessing the firearm, his knowing possession of the firearm, and the firearm's identity.

As a result, the government introduced evidence of Mr. Sharbutt's drug use and sales, and prior possession of the firearm.  Specifically, Detective Green and another officer testified as to items found in Mr. Sharbutt's home during their search, including a dead-bolt locking the master bedroom door, and in that bedroom, a black 9mm semi-automatic handgun with a fully loaded magazine in a shoulder holster found on top of a wooden chest, together with marijuana, amphetamine residue, syringes, rolling papers, a scale, smoking pipes and other items consistent with the distribution and use of drugs.

Several other witnesses also testified they purchased methamphetamine and marijuana from Mr. Sharbutt at the Eastgate house and/or used the drugs in his master bedroom, where the gun was found.  Many of these witnesses, as well as

another, also saw Mr. Sharbutt carry or possess a black semi-automatic handgun, or a gun described as black and silver, which many of them identified as, or like, the black 9mm semi-automatic handgun discovered in the master bedroom.

At the conclusion of the trial, the district court gave the jury a limiting instruction, stating evidence presented on Mr. Sharbutt's possible unlawful acts and conduct was admitted only for the limited purpose of showing 1) the identity of the firearm; 2) his motive; and 3) his knowledge of the offense charged. It further cautioned jurors evidence of other unlawful acts may not be considered proof of Mr. Sharbutt's guilt of the specific offense charged, but only for the limited purposes outlined. On appeal, Mr. Sharbutt contends the prejudicial nature of the government's drug and firearm evidence given at trial greatly outweighed its probative value.

"We review a district court's decision to admit evidence under [Federal Rule of Evidence] 404(b) for abuse of discretion." *See United States v. Kravchuk*, 335 F.3d 1147, 1156 (10th Cir.), *cert. denied*, 540 U.S. 941 (2003). Under the Federal Rules of Evidence, evidence of prior bad acts may be admissible if is "relevant" and shows "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.

R. Evid. 402 and 404(b). Federal Rule of Evidence 403 "permits the district court to exclude evidence if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,'" and we have held that "the district court has 'broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value.'" *United States v. Magleby*, 241 F.3d 1306, 1315 (10th Cir. 2001) (*quoting* Fed. R. Evid. 403 and *United States v. Youts*, 229 F.3d 1312, 1319 (10th Cir. 2000)). Accordingly, evidence of other crimes, wrongs or acts is admissible provided it is relevant, introduced for a proper purpose, and not unfairly prejudicial.

In this case, the government was required to prove Mr. Sharbutt knowingly possessed a gun in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and in so doing, had to counter Mr. Sharbutt's defense argument and evidence he did not possess the gun; he did not live, stay or reside in the house where the gun was found; and that several other individuals either lived in, or had access or keys to the house. Given guns are a well-known tool of a drug dealer, *see United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2000), *cert. denied,* 532 U.S. 1000 (2001); *McKissick*, 204 F.3d at 1293, the government's introduction of evidence of Mr. Sharbutt's drug sales at the Eastgate house was clearly relevant for the purpose of showing motive for possessing the gun and knowing it was there. For

-14-

the same reasons, evidence of the lock on the door to the room where the gun and other drug-related items were found together was relevant for establishing his knowledge of, and motive for, possessing the gun at his Eastgate home. Finally, introduction of evidence of Mr. Sharbutt's prior possession of the gun at the house was clearly relevant to establish its identity and his possession and knowledge of it at that location, and to counter Mr. Sharbutt's evidence indicating the possibility someone else with access to the house and bedroom possessed the gun.

As to any prejudice caused by the evidence at issue, the district court explained it must determine whether "the danger of undue prejudice outweighs the probative value of the evidence," and then carefully outlined the reasons the evidence met this requirement based on its relevancy for proving the elements of the crime alleged, i.e., Mr. Sharbutt's knowing possession of the gun found at the residence in question. To ensure no undue prejudice arose, the district court gave a limiting instruction which clearly cautioned the jury that its admission was only for the limited purpose of showing the identity of the firearm, Mr. Sharbutt's motive, and his knowledge of the offense charged. Under the circumstances presented, we hold the district court did not abuse its discretion in admitting the contested evidence.

## C. Exclusion of Prosecution Witness

Next, we address Mr. Sharbutt's contention that one witness's testimony should have been excluded for lack of notice of her testimony until the day of trial. The government counters Mr. Sharbutt received sufficient notice of this witness and the substance of her testimony. We agree.

In the government's Rule 404(b) notice to Mr. Sharbutt, filed two months before the jury trial, it identified eight witnesses, including the witness at issue, who would testify Mr. Sharbutt possessed the same or similar 9mm gun found at his residence. The notice further clearly indicated Mr. Sharbutt threatened the witness at issue several times with the same 9mm gun. On April 18, 2003, the Friday before the Monday trial, the district court issued an order determining the testimony of this witness was too remote because nothing in the government's notice established she knew of Mr. Sharbutt's possession of a gun after she ceased living with him in 1999. On the morning of the trial, the government filed an offer of proof to introduce evidence the same witness saw Mr. Sharbutt as recently as two weeks before the search of his residence with the same 9mm handgun. In so doing, the government acknowledged it obtained this information only five days before, on April 16, 2003, when it interviewed her. The following day, the defense noted its objections, after which the district court allowed

-16-

admission of her testimony into evidence.

Clearly, under the situation presented, Mr. Sharbutt enjoyed a two-month period in which to prepare his defense with respect to this witness's testimony, and did not learn until three days before the Monday morning trial that her testimony would not be admitted as being too remote in time. Meanwhile, the government also did not know until three days before trial that her testimony would not be admitted, and then made the offer of proof. While the government certainly could have notified Mr. Sharbutt's counsel of its intent to file its offer of proof over the weekend, the district court did not err in allowing the testimony, given Mr. Sharbutt received notice of the substance of her testimony two months in advance and clearly had time to prepare his defense thereto. We further conclude her testimony did not unduly prejudice Mr. Sharbutt, given the extended length of time he had to prepare for it and the fact he knew of, and prepared for, like testimony of other government witnesses who also testified he possessed the same gun. *Cf. United States v. Affleck*, 776 F.2d 1451, 1456 (10th Cir. 1985). While Mr. Sharbutt seems to complain the district court did not explicitly articulate its reason for admitting this witness's testimony under the government's offer of proof, it is clear the district court no longer considered her testimony too remote in time, given she witnessed Mr. Sharbutt with the gun only two weeks

before his arrest, and not solely before 1999.

### D.  Motion on BB Gun and Defendant's Evidence

On the second day of the trial, after the government rested, Mr. Sharbutt moved the district court to allow introduction of a BB pistol as demonstrative evidence.  At the time of the request, no witness had been questioned about a BB gun and the government had released its witnesses.  Mr. Sharbutt's counsel advised the district court:  1) the BB gun was like one Mr. Sharbutt once possessed; 2) they only received the BB gun the prior afternoon; and 3) they only became aware of the fact the black pellet gun looked real after talking to a defense witness the Friday before the trial.  After the government objected to introduction of the BB gun on grounds Mr. Sharbutt's request did not comply with Federal Rule of Criminal Procedure 16(b), the district court denied Mr. Sharbutt's request, concluding, in part, that the factual information regarding the BB gun was available to Mr. Sharbutt the Friday before he sought its admission the following Tuesday.  Nevertheless, the district court allowed Mr. Sharbutt to introduce the testimony of two witnesses who stated he possessed a BB pistol which could be mistaken as the gun obtained from the search.

The standard of review for admission of demonstrative evidence is whether

the district court abused its discretion and whether such evidence was or would be unduly prejudicial to the objecting party. *See United States v. Birch*, 39 F.3d 1089, 1093 (10th Cir. 1994). Under the Federal Rules of Criminal Procedure, a defendant has a duty to disclose to the government, and permit it to inspect, any object intended for use in the defendant's case-in-chief. Fed. R. Crim. P. 16(b)(1)(A)(ii).

In this case, Mr. Sharbutt was required, under Rule 16(b)(1)(A)(ii), to disclose to the government in advance of trial any evidence he planned to use in his case-in-chief. Admittedly, Mr. Sharbutt's counsel did not discover the fact that a defense witness could testify to the likeness of the BB pistol with the 9mm gun until the Friday before the trial. However, his counsel did not move for its introduction until the second day of the trial, well after the government rested its case and released its witnesses. *See, e.g., United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991) (concluding district court did not abuse its discretion in excluding documents on the basis of unfair advantage, where the defense found them on Friday, but did not inform the government of them until the middle of the trial the following Monday, after government rested its case and released its witnesses who lived out of state). In addition, the government clearly never received notice of the defense's BB gun theory or the opportunity to examine the

gun and question witnesses on it in advance of trial. Under the circumstances presented, the government was precluded from preparing any cross-examination or calling or re-calling any witnesses for the purpose of rebuttal. In addition, if Mr. Sharbutt owned a BB gun or pistol which looked like the one discovered in his home, he clearly knew of the similarity of that gun with the one found in his home well before the Friday interview of the witness in question, and therefore, through counsel, had ample time in advance of the trial to both notify the government of the intended introduction of a BB gun at trial and interview witnesses who might testify as to previously seeing the BB gun in his possession. For these reasons, permitting Mr. Sharbutt to introduce the BB pistol at the trial would have undoubtedly given the defense an unfair advantage and unduly prejudiced the government in prosecuting its case.

Moreover, while the district court precluded use of the BB gun as demonstrative evidence, it nevertheless permitted Mr. Sharbutt to pursue his defense theory related to the BB gun by allowing two witnesses to testify to the similarities of Mr. Sharbutt's BB pistol with the gun discovered in his bedroom. Accordingly, the district court did not abuse its discretion in excluding introduction of the BB gun at trial.

## E. *Blakely* Sentencing Issue

After filing his appeal, Mr. Sharbutt filed a supplemental brief challenging the constitutionality of his sentence, based on the district court's finding he used or possessed the firearm in connection with a controlled substance offense or a crime of violence, pursuant to U.S.S.G. §4B1.4(b)(3)(A). Mr. Sharbutt previously challenged the enhancement in his objections to the Presentencing Report and at the sentencing hearing. Pursuant to the Supreme Court's decision in *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531 (U.S. June 24, 2004), he claims the enhancement must be found beyond a reasonable doubt by a jury.

Mr. Sharbutt's enhancement claim misses the point. As explained hereafter, it is clear *Blakely*, like *Apprendi v. New Jersey*, 530 U.S. 466 (2000), does not "apply to sentencing factors that increase a defendant's guideline range but do not increase the statutory maximum." *United States v. Sullivan*, 255 F.3d 1256, 1265 (10th Cir. 2001), *cert. denied,* 534 U.S. 1166 (2002).

In this case, the district court sentenced Mr. Sharbutt pursuant to the Armed Career Criminal Act, under 18 U.S.C. § 924(e), which provides that a person who violates § 922(g) and has three previous convictions for a violent felony or a serious drug offense, or both, is subject to a statutory minimum mandatory

sentence of fifteen years in custody and a maximum sentence of life. *See Custis v. United States*, 511 U.S. 485, 487 (1994). With regard to the use of prior convictions to enhance a sentence, the Supreme Court, in deciding *Blakely*, unequivocally restated the proposition announced in *Apprendi*, 530 U.S. at 490, that "*[o]ther than the fact of a prior conviction,* any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 124 S. Ct. at 2536 (emphasis added). Applying this proposition, we have pointed out that a defendant with three prior violent felony convictions who is subject to a sentence enhancement under the Armed Career Criminal Act may not successfully challenge that sentence under *Apprendi*. *See United States v. Dorris*, 236 F.3d 582, 586-87 (10th Cir. 2000), *cert. denied*, 532 U.S. 986 (2001). *Blakely* does not affect this holding.

As a consequence, in this case, the three prior convictions supporting Mr. Sharbutt's sentence need not be presented to a jury. Because Mr. Sharbutt's 262-month sentence is below the prescribed statutory maximum sentence of life provided under 18 U.S.C. § 924(e), his sentence does not raise or implicate any constitutional concerns under either *Apprendi* or *Blakely*. Accordingly, because his sentence is below the statutory maximum, his argument that a jury, not the

district court, should have determined the facts applicable to an increase in his guideline range must fail.  *See Sullivan*, 255 F.3d at 1265.


IV.  Conclusion

For the foregoing reasons, we **AFFIRM** Mr. Sharbutt's conviction and sentence.


**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge